UNITIED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DUNE ENERGY, INC. | * | CIVIL ACTION NO.: 11-3166 |
| | * | |
| VERSUS | * | SECTION: "L" |
| | * | |
| FROGCO AMPHIBIOUS EQUIPMENT, LLC | * | JUDGE: ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE: (4) |
| | * | KAREN WELLS ROBY |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LIMITS OF LIABILITY UNDER THE OIL POLLUTION ACT

MAY IT PLEASE THE COURT:

This Memorandum is submitted on behalf of Frogco Amphibious Equipment, LLC (hereinafter referred to as "Frogco") through undersigned counsel, in support of its Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56 to to limit Frogco's potential liability pursuant to the Oil Pollution Act of 1990, Section 2704.

### I. FACTUAL BACKGROUND

Plaintiffs, Dune Energy and its insurer, St. Paul Surplus Lines Insurance, filed this Complaint for Damages against Frogco for reimbursement in the approximate amount of $1.3 million for the expenses Dune Energy/St. Paul allegedly incurred related to the cleanup/remediation of oil discharged in a field located in the Passe' Loutra National Wildlife Refuge/Garden Island Bay which was being operated by Dune Energy.[1] Dune Energy has alleged the court has subject matter jurisdiction over this matter pursuant to the Oil Pollution Act

---

[1] See Doc. No. 1 [Complaint for Damages]

1

of 1990 (33 U.S.C Section 2701 et seq.) [2]. Dune Energy has alleged that one of Frogco's Marsh Buggy Excavator "improperly handled the transfer line and/or used the back hoe claw in the vicinity of the marked transfer line" which "damaged the transfer line causing a leak of oil into the surrounding waters".[3]

Frogco was hired to provide and did provide a CAT 320 Marsh Buggy Excavator and a CAT 336 Marsh Buggy Excavator for the Dune Energy dredging operation site in Garden Island Bay in December 2010. [4] Exhibit "A". The CAT 320 Marsh Buggy Excavator's operational weight is approximately 65,000 lbs or 32.5 gross tons. Exhibit "A". The CAT 336 Marsh Buggy Excavator's operational weight is approximately 110,000 lbs or 55 gross tons. Exhibit "A". The CAT 320 Marsh Buggy Excavator and the CAT 336 Marsh Buggy Excavator are not constructed or adapted to carry oil or hazardous material in bulk as cargo or cargo residue. Exhibit "A". The CAT 320 Marsh Buggy Excavator and the CAT 336 Marsh Buggy Excavator are constructed, designed, used and capable of being a means of transportation on water. Exhibit "A".

## II. LAW AND ARGUMENT

### A. SUMMARY JUDGMENT

"Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that

---

[2] See Doc. No. 1 [Complaint for Damages]
[3] See Doc. No. 1 [Complaint for Damages]
[4] See Doc. No. 1 [Complaint for Damages]

the moving party is entitled to judgment as a matter of law."[5]  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.[6]

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party,[7] the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.[8]  The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence ." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted)..  Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir.2002). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions or other evidence to establish a genuine issue.[9]  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported Motion for Summary Judgment.[10]  Accordingly, conclusory allegations of the pleadings are insufficient to avoid summary judgment.[11]

### B.   APPLICATION OF LIMITATION ON LIABILITY OF THE OPA

The Oil Pollution Act of 1990 (33 U.S.C § 2701 et seq.) ("OPA") was enacted by Congress in response to the Exxon Valdez oil spill.  The OPA was intended to streamline federal law and "provide quick and efficient cleanup of oil spills, compensate victims of said spills, and

---

[5] *Bellard v. Gautreaux*, 2012 WL 851630, 3 (5th Cir. 2012).
[6] See *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).
[7] *See id.*
[8] *See Bellard v. Gautreaux*, 2012 WL 851630, 3 (5th Cir. 2012).
[9] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 264 -265 (5th Cir.2002).
[10] *Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, 330 (5th Cir. 1994).
[11] *See Bellard,* 2012 WL 851630 at *3.

internalize the cost of spills within the petroleum industry". *Rice v. Harkens Exploration, Co.,* 250 F. 3d 254 (5th Cir. 2001) (citing Senate Report No. 101-94). The Act actually placed strict liability on "responsible parties" for the discharge of oil into navigable waters of the United States and the adjacent land thereto. The "responsible party" is strictly liable for all removal costs and damages associated with the discharge. 33 USCA § 2702.

The OPA also provides for "Limits on Liability" based on the type and weight of the vessel involved in the accident. 33 USCA § 2704. Under section 2704 of the OPA, a person's liability under the Act is limited in accordance with the type and size of vessel or facility involved in the spill. *National Shipping Company of Saudi Arabia v. Moran Mid-Atlantic Corp.,* 924 F. Sup. 1436 (E.D. Virginia 1996). The total of the liability of a responsible party under section 2702 of this title and any removal costs incurred by, or on behalf of, the responsible party, with respect to each incident shall not exceed—(1) for a "tank vessel", the greater of-- (2) for any other vessel, $950 per gross ton or $800,000, whichever is greater. The liability of a third party that causes an oil spill is also subject to the liability limits established in section 2704. *National Shipping Company of Saudi Arabia v. Moran Mid-Atlantic Corp.,* 924 F. Sup. 1436 (E.D. Virginia 1996)—citing 33 USCA § 2702(d)(2).

The OPA defines "Tank vessel" as a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue, and that (A) is a vessel of the United States; (B) operates on the navigable waters; or (C) transfers oil or hazardous material in a place subject to the jurisdiction of the United States. 33 USCA § 2701(34). "Vessel" is defined as every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel. 33 USCA § 2701(37).

In this case, Frogco's potential liability in this matter is limited by the greater of $950 per gross ton of the Marsh Buggy Excavator or $800,000. Neither the CAT 320 Marsh Buggy Excavator or the CAT 336 Marsh Buggy Excavator are constructed or adapted to carry oil or hazardous material in bulk as cargo or cargo residue. Exhibit "A". However, the CAT 320 Marsh Buggy Excavator and the CAT 336 Marsh Buggy Excavator are constructed, designed, used and capable of being a means of transportation on water. Exhibit "A". Therefore, both the CAT 320 Marsh Buggy Excavator and the CAT 336 Marsh Buggy Excavator are considered "vessels" under the OPA but are NOT "tank vessels".

The CAT 320 Marsh Buggy Excavator's operational weight is approximately 65,000 lbs or 32.5 gross tons. Exhibit "A". The CAT 336 Marsh Buggy Excavator's operational weight is approximately 110,000 lbs or 55 gross tons. Exhibit "A". Based on the gross tons of the CAT 320 the max liability for Frogco would be the greater of ($950 x 32.5 tons=$30,875) or $800,000. Based on the gross tons of the CAT 336 the max liability for Frogco would be the greater of ($950 x 55 tons=$52,250) or $800,000. Under either scenario Frogco's max liability in this matter will be $800,000. To get a max liability above $800,000 the gross tons of the Marsh Buggy Excavator that Dune alleges damaged the pipeline would have to weigh more than 842 gross tons.

### III. CONCLUSION

Dune Energy/St. Paul's have asserted that this Honorable Court has jurisdiction pursuant to the OPA and have sought reimbursement in the approximate amount of $1.3 million which they incurred related to the cleanup/remediation of oil discharged in a field located in the Passe' Loutra National Wildlife Refuge/Garden Island Bay which was being operated by Dune

Energy.[12] Dune/St. Paul's allege that the oil discharge was caused by one of Frogco's Marsh Buggy Excavators. Pursuant to OPA Section 2704, Frogco's liability is limited to $800,000 based on the type and size of the Marsh Buggy Excavators. Section 2704 has been found to apply to alleged third party tortfeasors under the OPA. Therefore, Frogco requests that this Honorable Court grant its Motion for Partial Summary Judgment limiting Frogco's potential liability in this matter to $800,000 pursuant to OPS Section 2704.

Respectfully submitted:

**CERTIFICATE OF SERVICE**

I CERTIFY THAT A COPY OF THE FOREGOING PLEADING HAS BEEN SERVED UPON COUNSEL FOR ALL PARTIES BY EMAIL PURSUANT TO THE COURT'S ELECTRONIC CASE FILING (ECF) SYSTEM,

ON THIS __22___ DAY OF __March _ , 2013.

___/s Brant J. Cacamo ___

___/s Brant J. Cacamo_____
SIDNEY J. ANGELLE, #1002
ERIC B. BERGER, #26196
LOBMAN, CARNAHAN, BATT,
ANGELLE & NADER
400 POYDRAS STREET, SUITE 2300
NEW ORLEANS, LOUISIANA 70130
(504) 586-9292   FAX (504) 586-1290

---

[12] See Doc. No. 1 [Complaint for Damages]