UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DUNE ENERGY, INC.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 11-3166** |
| **FROGCO AMPHIBIOUS EQUIPMENT, LLC** | * | **SECTION "L"(4)** |

### ORDER AND REASONS

The Court has pending before it Defendant FROGCO Amphibious Equipment, LLC's Motion for Partial Summary Judgment. (Rec. Doc. 45). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

**I.    BACKGROUND**

This case arises out of an oil spill in Passé Loutra National Wildlife Refuge on land owned by Plaintiff Dune Energy, Inc. ("Dune Energy"), a Texas company. Dune Energy owns a 4" bulk underwater oil transfer line in Garden Island Bay and contracted with non-party Magnolia Dredge & Dock, LLC ("Magnolia") for Magnolia to dredge a canal next to that transfer line. Magnolia subcontracted with Defendant FROGCO Amphibious Equipment, LLC ("FROGCO") to assist with the dredging.

Dune Energy claims that on December 29, 2010, FROGCO's amphibious back hoe, also known as a marsh buggy excavator, caused damage to Dune Energy's transfer line, which had allegedly been clearly marked by a surveyor, and caused oil to leak into the surrounding waters. Dune Energy alleges that it sustained $1,300,000 in cleanup and remediation-related damages, for which it received reimbursement from its insurer, Plaintiff St. Paul Surplus Lines Insurance

Company ("St. Paul"), minus a $100,000 deductible. Plaintiffs now seek to recover those funds from FROGCO as the allegedly negligent responsible party.

Initially, only Dune Energy was named as a Plaintiff in the case, but on October 31, 2012, the Court granted FROGCO's motion to join St. Paul as an indispensable party. (Rec. Doc. 36). Additionally, First Mercury Insurance Company ("First Mercury") has intervened as a Plaintiff against FROGCO. (Rec. Doc. 22). First Mercury asserts that it issued a CGL policy to FROGCO and seeks a declaratory judgment that the policy does not cover Dune Energy's claims against FROGCO.

## II.   PRESENT MOTION

FROGCO now moves for partial summary judgment to limit its liability pursuant to 33 U.S.C. § 2704. (Rec. Doc. 45). FROGCO argues that its liability should be limited to "the greater of $950 per gross ton of the Marsh Buggy Excavator or $800,000," which is the amount set out in § 2704(a)(2) for "any other vessel" that is not a tank vessel. FROGCO asserts that the marsh buggy excavator that was involved in the accident is not a tank vessel, which is defined in § 2701 as "a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue," but is instead simply a vessel. FROGCO asserts that the "any other vessel" standard applies to the marsh buggy excavator because it is not designed to carry oil or other hazardous material, but is capable of being used for transport across water. FROGCO therefore asserts that it is eligible as a matter of law for a limit on liability under the Oil Pollution Act. *Id.* § 2704.

Dune Energy (along with St. Paul) opposes FROGCO's motion under two alternative arguments. First, Dune Energy asserts that the limitations on liability set out in the OPA do not

apply to FROGCO because FROGCO is not the "responsible party" as defined by the OPA. Rather, Dune Energy argues that it is the "responsible party" as defined by the Act and that as such, FROGCO is not entitled to any limitations on its liability. Alternatively, Dune Energy argues that if the Court does find that FROGCO is entitled to limitations on liability, the Court nonetheless should not limit liability based on "vessel" status, because the marsh buggy excavator involved in this accident is not a vessel.

## III.     LAW AND ANALYSIS

### A.     Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific

facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Partial summary judgment dismissing only certain claims is appropriate under the same standards. *See* Fed. R. Civ. P. 56(d).

**B.     Oil Pollution Act of 1990**

The Oil Pollution Act of 1990 ("OPA") is codified in 33 U.S.C. § 2701, et. seq. The OPA provides that the responsible party for a vessel or facility from which oil is discharged into navigable waters is liable for the removal costs and damages that result from such an incident. *Id.* § 2702. The OPA defines a vessel as a "watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel." *Id.* § 2701(37). The OPA defines a "tank vessel" as "a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue," in addition to other requirements. *Id.* § 2701(34).

Under the OPA, a person owning or operating a pipeline counts as a "responsible party." *Id.* § 2701(32)(E). Although the OPA holds responsible parties liable for oil spills, it also allows them to limit their liability based on the value of the vessel or facility involved in the accident causing the spill. *Id.* § 2704. In cases involving a vessel that is not a tank vessel, the liability of the responsible party is limited to "$950 per gross ton or $800,000, whichever is greater." *Id.* § 2704(a)(2). In cases involving an offshore facility (other than a deepwater port), the liability of

the responsible party is limited to "the total of all removal costs plus $75,000,000." *Id.* § 2704(a)(3).

The OPA also contains provisions for holding third parties liable. *Id.* § 2702(d)(1). When a third party is liable to a responsible party for the discharge of oil, the third party is also entitled to some limitations on liability. *Id.* § 2702 (d)(2). If the third party's relevant act or omission occurred "in connection with a vessel or facility owned or operated by the third party," then the limits in § 2704 apply. *Id.* § 2702(d)(2)(A). In all other cases, the third party's liability "shall not exceed the limitation which would have been applicable to the responsible party of the vessel or facility from which the discharge actually occurred if the responsible party were liable." *Id.* § 2702(d)(2)(B).

### C. Analysis

As the owner of the pipeline, Dune Energy is correct in asserting that it is the "responsible party" in this case as defined by the OPA. However, the OPA also includes provisions for holding liable third parties who are actually responsible for oil discharge into navigable waters. The OPA allows for third party liability in one of two ways. First, the third party may be treated as the responsible party. 33 U.S.C. § 2702(d)(1)(A). Second, the responsible party may be entitled by subrogation to all rights the claimant and the United States government had against the third party. *Id.* § 2702(d)(1)(B). In this case, the first theory does not apply, because FROGCO has not been treated as the responsible party; Dune Energy has made all clean-up efforts pursuant to its responsibility under the OPA. Therefore, Dune Energy pursues this claim under a theory of subrogation. In other words, Dune Energy seeks to subrogate the United States' claims against FROGCO for removal costs.

As described above, third parties such as FROGCO are eligible to limit their liability, but the amount of the limitation depends on the circumstances of the case. If FROGCO's marsh buggy excavator is found to be a vessel, then the OPA instructs in § 2702(d)(2)(A) that the limitations set out in § 2704(a)(2) will apply.[1] On the other hand, if the marsh buggy excavator is not a vessel, then the limitation provision under § 2702(d)(2)(B) will apply. This provision limits the third party's responsibility to the limitation which would have been applicable to the responsible party of the vessel or facility from which the discharge actually occurred. *Id.* § 2702. This limitation as applied to the current case would be "the total of all removal costs plus $75,000,000." *Id.* § 2704. Because Dune Energy requests far less than this amount in damages, the issue of limitation will become moot if this provision is held to apply. Therefore, the extent of FROGCO's liability limitations rests on whether the marsh buggy excavator is a vessel.

Dune Energy argues that the marsh buggy excavator is not a vessel. In support of this argument, Dune Energy cites several Jones Act and other maritime cases stating that a marsh buggy is a "sometime vessel," meaning that it is only a vessel when it is in travel on a navigable stream or waterway. *Strother v. Bren Lynn Corp.*, 671 F. Supp. 1118 (W.D. La. 1987), *aff'd*, 834 F.2d 1023 (5th Cir. 1987); *Percle v. Western Geophysical Co.*, 528 F. Supp. 227 (E.D. La. 1981); *see also Melancon v. Tassin Amphibious Equipment, Inc.*, 486 So.2d 6 (La. App. 4th Cir. 1985). In one case, for example, another section of this Court held that a marsh buggy was not a vessel while it was operating in water approximately one foot deep. *Percle*, 528 F. Supp. at 230. The court noted that the "amphibious vehicle" could have been a vessel if it had been traveling

---

[1] Because FROGCO's marsh buggy excavator is not a tank vessel, the applicable limitation would be "$950 per gross ton or $800,000, whichever is greater." 33 U.S.C. § 2704(a)(2).

in a navigable waterway, but it was not doing so at the time of the accident in that case. *Id.*; *see also In re Destiny Drilling (USA) Inc.*, 184 F.3d 816 (5th Cir. 1999) (holding that airboat in Jones Act case was not vessel in navigation while being operated in non-navigable waters).

FROGCO argues that the marsh buggy is a vehicle under the OPA's definition of a "vessel," which FROGCO argues differs significantly from the examples cited by Dune Energy. Under the OPA, a vessel is defined as "every description of a watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel." 33 U.S.C. § 2701(37). Thus, the OPA's definition does not explicitly contain the "navigable waters" requirement that is the main focus of the opinions cited by Dune Energy. *Compare, e.g.*, *In re Destiny Drilling*, 184 F.3d at 816 (noting that "[a] worker is considered a Jones Act seaman if injured while working aboard a vessel in navigation," and that the Fifth Circuit "has defined a vessel as a structure designed or utilized for transportation . . . across navigable waters" (internal quotation marks omitted)). FROGCO argues that its marsh buggy was, in fact, "capable of being used as a means of transportation on water," and therefore, it counts as a vessel under the OPA.

In support of this argument, FROGCO relies on the Supreme Court's recent opinion in *Lozman v. City of Riviera Beach Florida*, 133 S. Ct. 735 (2013), which applied an identical definition of "vessel." In *Lozman*, the Court opined that the phrase "capable of being used" encompasses "practical" possibilities, not just "theoretical" ones. *Id.* at 741. The Court further noted that "transportation" involves "the conveyance (of things or persons) from one place to another." *Id.* Accordingly, the test formulated by the Court is whether "a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a

practical degree for carrying people or things over water." *Id.* Under this test, the Court held that a "floating home" was not a vessel, as it had no rudder or steering mechanism, had an unraked hull, and was incapable of self-propulsion. *Id.* Additionally, in reviewing past cases, the *Lozman* Court noted the distinction between a structure that is "regularly, but not primarily, used (and designed in part to be used) to transport workers and equipment over water" and a structure that is "not designed (to any practical degree) to serve a transportation function and did not do so." *Id.* at 743. The first type of structure is a vessel, while the second type is not. FROGCO argues that its marsh buggy falls into this first category and is therefore a vessel under the OPA.[2]

      The Court is unable to hold as a matter of law that the marsh buggy is not a vessel based on the cases cited by Dune Energy. All of those cases predate *Stewart v. Dutra Construction Co.*, 543 U.S. 481 (2005), which rejected the idea that "a structure's locomotion at any given moment" is important in determining whether the structure was a vessel "in navigation" for the purpose of a Jones Act case. *Id.* at 1120. Therefore, it is not dispositive that the marsh buggy excavator in this case was apparently not moving at the time of the incident. Dune Energy also made assertions in its briefs and at oral argument regarding the marsh buggy's alleged inability to travel on water, navigable or otherwise, but there is no evidence in the record to support these assertions.[3]

---

[2] Additionally, FROGCO argues that Dune Energy has not provided any evidentiary support for its assertions regarding the navigability of the marsh buggy excavator, and therefore, a grant of summary judgment to FROGCO is appropriate. However, FROGCO also did not provide evidence of the marsh buggy's navigability and characteristics. Accordingly, the Court will not rule in FROGCO's favor on this basis.

[3] Another wrinkle in this case is that it is not clear whether a contrivance must be capable of travel on *navigable* waters to be considered a vessel under the OPA. FROGCO argues that the OPA's definition differs from that of the Jones Act, because the OPA's definition does not

In order to determine whether the marsh buggy excavator is a vessel, the Court must examine whether "a reasonable observer, looking to the [marsh buggy's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Lozman*, 133 S. Ct. at 741. It appears that the marsh buggy is distinguishable from the floating home considered and rejected the *Lozman* Court, as the marsh buggy excavator seems to have had a steering mechanism and was apparently capable of self-propulsion. However, the Court lacks a sufficient factual record to allow a final determination of whether the marsh buggy excavator actually qualified as a vessel under the *Lozman* standard. FROGCO has submitted an affidavit including information about the weight of the marsh buggy, but the affidavit includes only conclusory assertions regarding the marsh buggy's characteristics and activities. (Rec. Doc. 45-3 at ¶¶ 6, 7). Thus, the Court is unable to conclude at this time whether the marsh buggy is actually a "vessel" under the OPA.

In other words, the *Lozman* test is highly fact dependent, and the material facts appear to remain in dispute. Therefore, a grant of summary judgment would be inappropriate at this time.

---

explicitly include a "navigable waters" requirement. However, this question is not as simple as FROGCO suggests, for multiple reasons. First, the Jones Act actually derives its definition of a "vessel" from the same statutory language that is contained in the OPA (and the same statutory provision that the Court interpreted in *Lozman*). The "in navigation" requirement was added via statutory interpretation. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373-74 (1995). Second, the main liability provision of the OPA itself does include a "navigable waters" requirement. 33 U.S.C. § 2702(a) (stating that a responsible party is liable for removal costs and damages of oil discharged or threatened to be discharged "into or upon the navigable waters or adjoining shorelines or the exclusive economic zone"). And the *Lozman* Court suggested that it would be appropriate to look to "the purposes of major federal maritime statutes" in order to determine whether a particular structure is a vessel. On the other hand, the definition of a "tank vessel," explicitly includes a "navigable waters" requirement, which adds some significance to the absence of such a requirement from the general definition of a "vessel."

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that FROGCO's motion for partial summary judgment (Rec. Doc. 45) is DENIED.

New Orleans, Louisiana, this 29th day of April, 2013.

_____
UNITED STATES DISTRICT JUDGE